**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA**

**vs.**                                                                          **CASE NO.: 4:06-CR-045-SPM**

**MARIO SANCHEZ-FLORES,**

   **Defendant.**
_____/

**ORDER SUPPRESSING EVIDENCE**

**THIS CAUSE** comes before the Court upon the "Motion to Suppress" (doc. 15) filed August 28, 2006 and the Government's response (doc. 16) filed September 11, 2006.  Defendant seeks to suppress evidence of the alien registration card found in his possession during an arrest.  The Court held a hearing on September 25, 2006 at which both sides presented evidence and testimony.  While the motion and response differ on the crucial question of whether Defendant was handcuffed before or after he was questioned, both sides agreed at the hearing that Defendant was in fact handcuffed before any questioning took place.  Thus, the sole issue for this Court's consideration is whether the alien registration card was discovered as the result of an unlawful arrest.

**FACT SUMMARY:**

   While serving an unrelated warrant at a duplex in Tallahassee, Immigrations and Customs Enforcement (ICE) agents were informed that illegal aliens were

working at Village Pizza and Pasta, a local restaurant. Defendant's name was among those given to the agents. A records check returned no "hits" on the names, meaning that the individuals were either citizens or illegal aliens. The agents consequently decided to set up a "Worksite Enforcement Operation"[1] at the restaurant, which involves meeting the owner at the restaurant and obtaining permission to investigate the employees.

On July 27, 2006, eight armed agents entered the restaurant. Sergeant Robert Pace was assigned to cover the rear of the premises. While standing near the west rear door, he heard a noise behind him. Turning around, he saw Defendant standing inside a cooler used for storage of supplies and dry goods. Defendant had entered the storage unit to retrieve aprons and some flour for making pizza dough; in fact, he was still holding the flour when the agent saw him. Believing Defendant to be an illegal alien based on the briefing he had received that morning, Pace told Defendant to come out of the storage unit and to "turn around and put his hands up." After handcuffing Defendant, the agent asked whether Defendant had any "papers" and whether he was in the country legally. Defendant answered truthfully that he was a Mexican alien with no legal reason to be in the country.

A search of Defendant's person revealed a counterfeit alien registration card in the left rear pocket of his pants. Defendant now seeks to suppress evidence of that card, claiming that it was obtained unlawfully.

---

[1] Authority for such operations is found in 8 C.F.R. § 287.8(f).

**ANALYSIS:**

On the morning the hearing was held, the Government advised that it had just received new information a few minutes prior indicating that Defendant was, in fact, handcuffed before any questioning took place. This information was borne out by the testimony of both Defendant and Sergeant Pace, who agreed on the stand that Defendant was handcuffed prior to questioning. Thus, the Government's remaining theory is that the agent had concerns about the likelihood of Defendant either fleeing or becoming violent.

The threshold question is whether Defendant was "in custody" such that he should have been advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). If so, then any statements he made to officers without benefit of Miranda warnings are inadmissible in court. United States v. Torkington, 874 F.2d 1441, 1445 (11th Cir. 1989).

Handcuffing or using other means of restraint does not automatically convert a Terry[2] stop into an arrest. United States v. Kapperman, 764 F.2d 786, 790 n.4 (11th Cir. 1985). Law enforcement officers are entitled to take "reasonable" action to protect themselves under the circumstances. Id. Cases in which handcuffing has been held reasonable involve threats of safety to the officer or potential flight of the defendant. See, e.g., United States v. Williams, 2006 WL 1697534, at 3 (11th Cir. Jun. 21, 2006)(handcuffing reasonable, given that defendant had discharged a

---

[2] Terry v. Ohio, 392 U.S. 1 (1968). Neither side disputes that the agent was conducting a Terry stop in this case.

firearm, left the scene, and then returned to the scene and discharged a firearm again); United States v. Fields, 178 Fed. Appx. 890, 893-94 (11th Cir. 2006)(handcuffing and putting defendant in patrol car reasonable in light of the "extremely violent" nature of drug dealing; defendant's ignoring the officer's commands; and defendant's reaching into his back pocket, perhaps for a weapon); United States v. Blackman, 66 F.3d 1572, 1576 (11th Cir. 1995)(handcuffing reasonable in light of "the violent nature of the robberies, of the number of suspects (four adult males) involved, and of the agents' need to protect themselves").

None of those circumstances is present in the instant case. Here, Defendant was being questioned about a non-violent offense–that of being in the United States illegally. When the agent encountered him, he was in the storage unit with aprons in one hand and flour in the other. The only testimony Pace provided regarding possibility of escape was his statement that he thought Defendant was hiding in the storage unit and that Defendant might "get away" if he were unrestrained. However, on cross-examination, Pace admitted that Defendant made no efforts either to conceal himself or to run away. He also testified that Defendant complied with all commands and offered no resistance during the encounter.

The agent's cited "safety" concern is also unavailing; he testified that he felt it was important to put Defendant in custody so that he would not be able to approach the agent from behind. However, as noted *supra*, Defendant was in the storage unit at the time of their encounter and would have had to exit the unit, through the only door available, and make his way around behind the agent, all

while in the agent's plain sight.

Having considered the totality of the circumstances, the Court finds that the Government has not met its burden of showing that the officer acted reasonably in handcuffing Defendant during the Terry stop.  Because Defendant presented no threats of violence or escape, Defendant was "in custody" once he was placed in handcuffs and should thus have been given Miranda warnings.  The failure to Mirandize Defendant necessitates the suppression of Defendant's statements and evidence discovered subsequent to his arrest.  Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. The motion to suppress (doc. 15) is hereby *granted*.

2. No evidence discovered as a result of the unlawful arrest shall be presented by the Government in its case-in-chief.

**DONE AND ORDERED** this tenth day of October, 2006.

*s/ Stephan P. Mickle*
Stephan P. Mickle
United States District Judge